IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NICOLE C. CARTER,

     Plaintiff,                              No. 2:12-cv-0638-KJN

     v.

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.                         <u>ORDER</u>

/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Disabled Child Insurance Benefits under Title II, as well as Supplemental Security Income ("SSI") under Title XVI, respectively, of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from January 1, 1997, through the date of the final administrative decision. (Dkt. No. 15.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 16.) Plaintiff filed a reply brief. (Dkt. No. 17.)

---

[1] This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 7, 9.)

1

For the reasons that follow, the court grants plaintiff's motion for summary judgment in part with respect to plaintiff's claim for SSI under Title XVI of the Act, remanding that claim for further proceedings under sentence four of 42 U.S.C. § 405(g). However, the court grants the Commissioner's cross-motion for summary judgment with respect to plaintiff's Title II claims for DIB and Disabled Child Insurance Benefits.

I.  BACKGROUND

Plaintiff was born on February 2, 1976, obtained a GED and certification as a medical assistant, and previously worked as a medical assistant, cashier, receptionist, and topless dancer.[2] (Administrative Transcript ("AT") 31, 48, 71, 73-76, 93-94, 110-15.) On November 13, 2009, plaintiff applied for DIB, Disabled Child Insurance Benefits, and SSI, alleging that she was unable to work as of January 1, 1997, primarily due to bipolar disorder, anxiety, depression, and irritable bowel syndrome. (AT 22, 40, 110-15, 271.) On January 21, 2010, the Commissioner determined that plaintiff was not disabled. (AT 22, 40, 110-12.) Upon plaintiff's request for reconsideration, the determination was affirmed on August 5, 2010. (AT 22, 40, 113-15.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on April 4, 2011. (AT 56-109.)

In a decision dated May 17, 2011, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from January 1, 1997, through the date of that decision. (AT 22-32, 40-50.)[3] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 26, 2012. (AT 1-6.)

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] The ALJ actually issued two written decisions, both dated May 17, 2011, one addressing the DIB and SSI claims and the other addressing the Disabled Child Insurance Benefits claim. As plaintiff points out, both written decisions are nearly identical, and for convenience, the court refers to the two written decisions jointly as the ALJ's decision. (Dkt. No. 15-1 at 1 n.1.)

Thereafter, plaintiff filed this action in federal district court on March 13, 2012, to obtain judicial review of the Commissioner's final decision. (Dkt. No. 1.)

II. ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ improperly discredited the opinion of plaintiff's treating psychiatrist; and (2) whether the ALJ improperly discounted plaintiff's statements regarding her symptoms and functional limitations.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB, Disabled Child Insurance Benefits, and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] As

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).

an initial matter, the ALJ found that plaintiff remained insured for purposes of DIB through December 31, 2003.  (AT 24, 42.)  The ALJ also noted that plaintiff would have to establish disability prior to February 2, 1998, the date she attained age 22, to be eligible for Disabled Child Insurance Benefits.  (AT 22, 32.)

At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January 1, 1997, plaintiff's alleged disability onset date.  (AT 24, 42.)  The ALJ essentially found that the work plaintiff had performed since January 1, 1997, did not meet

---

A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

A claimant may be entitled to Disabled Child's Insurance Benefits "on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if – (1) You are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359; (2) You are dependent on the insured, as defined in §§ 404.360 through 404.365; (3) You apply; (4) You are unmarried; and (5) You are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in § 404.367."  20 C.F.R. § 404.350(a).

4

the requirements of substantial gainful activity.  At step two, the ALJ determined that plaintiff had the following severe impairments: depression and anxiety.  (AT 25, 42.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 25, 43.)

        Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She has the cognitive and concentrative capacity to understand, remember, and perform simple level tasks and instructions.  She can do work in a non-public setting, and she has no adaptive limitations.

(AT 28, 45.)

        At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (AT 30, 48.)  However, at step five the ALJ determined that, in light of plaintiff's age (younger individual), education (high school equivalent education with ability to communicate in English), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  (AT 31, 48.)

        Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from January 1, 1997, through the date of the ALJ's decision.  (AT 32, 49.)

    B.    <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

        1.    <u>Whether the ALJ improperly discredited the opinion of plaintiff's treating psychiatrist</u>

        Plaintiff contends that the ALJ improperly discounted the opinion of plaintiff's treating psychiatrist, Dr. Nini Hla, regarding plaintiff's mental limitations.

        The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Holohan v. Massanari</u>,

5

246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by no more than minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, plaintiff's treating psychiatrist, Dr. Nini Hla, completed a mental impairment questionnaire on March 8, 2011. (AT 426-31.) Dr. Hla indicated that plaintiff had been under her care since September 2007, and that plaintiff was seen once every month or two

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

6

for medication management. (AT 427.) Dr. Hla diagnosed plaintiff with bipolar affective disorder and a panic disorder, assessed a GAF score of 30-40 (with a highest score in the past year of 40),[6] and noted that plaintiff was slowly responding to medications, including Celexa, Risperdal, Lithium, Dekapote ER, and Ambien. (Id.) Her medications had side effects of tiredness and fatigue. (Id.) Dr. Hla listed clinical findings of manic episodes with decreased sleep, decreased appetite, increased activity, pressured speech, grandiose flights of ideas, and racing thoughts, as well as depressive episodes with decreased energy, memory, and concentration. (Id.) She further indicated that plaintiff experienced symptoms such as loss of interest, seclusiveness, emotional withdrawal, irrational fear, and hyperactivity. (AT 428.) Plaintiff also lost weight when she was manic. (AT 429.) Plaintiff was noted to have suicidal ideations with severe anxiety, causing her to be unable to function when going out. (AT 427.) Her prognosis was assessed as fair to guarded. (Id.)

      Dr. Hla opined that plaintiff had moderate to marked limitations with respect to activities of daily living and social functioning; had moderate limitations with respect to concentration, persistence, or pace; and had experienced three episodes of decompensation within a twelve-month period. (AT 429-30.) Dr. Hla noted that plaintiff had quit her job in 2007 and had stopped going to school due to her mental incapacity. (AT 430.) She observed that, although plaintiff did not have any physical limitations, plaintiff would not be able to handle demands and stressors on the job, would easily decompensate, and would likely be absent from work for more than four days per month. (Id.) Indeed, Dr. Hla opined that plaintiff was completely unable to function independently outside of her home. (Id.) Dr. Hla stated that

---

[6] GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Id.

7

plaintiff's impairments have lasted or could be expected to last at least twelve months, and that she did not believe that the medical record was inconsistent with plaintiff's assertion that her condition had been severe since age 18. (AT 430-31.) Finally, after plaintiff at the administrative hearing testified to using marijuana against another doctor's advice and admitted that Dr. Hla did not know about her marijuana use (AT 81-82), plaintiff's counsel submitted a supplemental form letter from Dr. Hla, dated April 6, 2011, indicating that plaintiff's limitations would remain at the same severity as indicated in the prior March 8, 2011 questionnaire even if drug and/or alcohol use were to stop. (AT 439.)

The ALJ addressed Dr. Hla's opinion as follows:

> As for the opinion evidence, the undersigned does not accord great or controlling evidentiary weight to Dr. Hla's opinion. The doctor has only been treating the claimant since 2007, and the claimant alleges disability since 1997 (Exhibit 9F/2). Therefore, the doctor's treatment records do not establish that the claimant was disabled prior to her date last insured. The doctor assessed the claimant as extremely limited due to her mental impairments, and did not include the effects of her active marijuana abuse on her functioning (Exhibit 9F). The claimant testified that she has not told Dr. Hla of her marijuana abuse (Testimony). The doctor's follow-up assessment indicated that if the claimant stopped abusing marijuana her remaining impairments would be as severe as assessed earlier (Exhibits 9F and 11F). The undersigned does not find this to be a credible assessment as the doctor's earlier assessment has been discredited as too extreme. The doctor noted that the claimant was seen once every month only for medication management (Exhibit 9F/2). There was no evidence of therapy, counseling, behavior modification, or referral for drug rehabilitation (since the doctor apparently did not know of the claimant's abuse).

(AT 30, 47.)

As an initial matter, the court finds that substantial evidence supports the ALJ's conclusion that plaintiff has not established, and Dr. Hla's opinion does not support, the presence of disability prior to December 31, 2003 (plaintiff's last insured date for purposes of DIB). (AT 30, 48.)

////

Generally, medical or psychological assessments should not be disregarded solely because they are rendered retrospectively, and such assessments may be relevant to a prior period of disability. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). However, in determining how much weight to give to such a retrospective assessment, the court may consider whether the report specifically assessed plaintiff's functional capacity prior to any applicable insurance expiration date; whether the records created during the time period at issue made only limited references to limitations in functional capacity; whether intervening circumstances or events exacerbated the condition; and whether the retrospective opinion conflicted with the same provider's earlier opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). Courts have suggested that retrospective opinions may be even less persuasive in the specialty of mental health. "The opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status, however, is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam." Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) ("After-the-fact psychiatric diagnoses are notoriously unreliable").

In this case, Dr. Hla only started treating plaintiff in September 2007, and there are no objective medical/psychological signs and findings indicating that plaintiff was disabled prior to that time. (AT 427.) Treatment notes from Sacramento County Mental Health Treatment Center document a mental health admission on October 26, 1999, after plaintiff threatened her mother with a knife (although plaintiff initially stated that she had attempted to slash her own wrists). (AT 350.) However, at the time plaintiff had tested positive for amphetamine, and it was discovered that she had stopped taking her anti-depressant (which she had been on for seven years) three weeks prior to the incident. (Id.) Psychiatrist Dr. C. Brennan noted that plaintiff quickly re-compensated after she was restarted on medication, and she was discharged on October 29, 1999, with diagnoses of major depression, amphetamine abuse, cannabis dependence, and borderline personality disorder. (AT 350-51.) The record contains no

documentation of other mental health treatment until plaintiff started seeing Dr. Hla in 2007. Thus, at best, the medical records from before December 31, 2003, show that plaintiff experienced acute symptoms from mental impairments for a short period of time when she went off her medication and used non-prescription drugs, but that her impairments were otherwise controlled with medication.

Given the lack of significant, documented mental health treatment prior to December 31, 2003, the fact that Dr. Hla did not start treating plaintiff until several years later in 2007, and the fact that Dr. Hla provided no specific findings or reasoning in support of her rather speculative assessment of the onset date of plaintiff's mental limitations, the ALJ permissibly found that Dr. Hla's opinion in that regard was conclusory and minimally supported. "The ALJ need not accept an opinion of a physician--even a treating physician--if it is conclusionary and brief and is unsupported by clinical findings." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing Magallanes, 881 F.2d at 751); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected the opinion of a treating physician because it was "unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions").

Furthermore, as the ALJ observed, plaintiff's own activities do not support the presence of a disabling mental impairment prior to December 31, 2003. (AT 29, 46.) Plaintiff reported in writing, and testified at the hearing, that she worked, at least part-time, as a topless dancer for intermittent periods between 1997-2006. (AT 76, 93-94, 272, 279, 294.) According to plaintiff's written statements, this job involved dancing on a stage for customers all day, being on her feet for 8 hours, squatting up and down in heels, and being up late until 3 a.m. each morning. (AT 272, 294.) Additionally, plaintiff completed vocational training in medical assistance at MTI, and obtained a certificate in February 2007. (AT 73, 276.) See Macri, 93 F.3d at 544 (noting that claimant's completion of an educational program undermined allegations of disability).

Accordingly, the court finds that the ALJ provided specific and legitimate reasons for discounting the opinion of Dr. Hla as to plaintiff's alleged January 1, 1997 onset date. The court also concludes that substantial evidence in the record as a whole supports the ALJ's determination that plaintiff has not established disability prior to December 31, 2003.

Contrary to plaintiff's argument, there is also no need for further development of the record by a medical expert with respect to plaintiff's onset date. Indeed, because the record, as discussed above, contains no objective medical or psychological signs and findings plausibly showing that plaintiff was disabled prior to December 31, 2003, further medical expert testimony would be speculative and futile. It is well established that a claimant bears the burden of providing medical and other evidence that support the existence of a medically determinable impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). Here, plaintiff was represented by counsel at the administrative hearing, and does not claim that the ALJ somehow failed to obtain any relevant treatment records or test results from that time period. Furthermore, as the Commissioner pointed out, as of 1999 plaintiff had already taken an anti-depressant for several years (AT 350), reasonably suggesting that this is not a case where the claimant had an unknown and/or unreported mental impairment. Thus, based on the present record, no further medical expert opinion as to the period prior to December 31, 2003 is warranted.

Because plaintiff was required to establish disability prior to February 2, 1998 (the date she attained age 22) to be eligible for Disabled Child Insurance Benefits, and to establish disability prior to December 31, 2003 to be eligible for DIB, the Commissioner is entitled to summary judgment on these claims.

The analysis as to plaintiff's remaining SSI claim filed on November 13, 2009, is somewhat different, because Dr. Hla actually treated plaintiff during the period at issue in that claim. Generally, SSI is not payable prior to the month following the month in which the

11

application was filed.  See 20 C.F.R. § 416.335.  Thus, the relevant period for purposes of the SSI claim is approximately November 13, 2009, to the date of the ALJ's decision.  In rejecting Dr. Hla's opinion regarding plaintiff's mental limitations during this period, the ALJ pointed to deficiencies in Dr. Hla's opinion and essentially incorporated into the RFC the December 31, 2009 opinion of non-examining state agency psychiatrist Dr. Paxton, who opined that plaintiff could perform simple level tasks in a non-public setting.  (AT 28, 30, 45, 47, 375, 388.)[7]

        The court agrees that Dr. Hla's very severe assessment appears somewhat at odds with her more benign clinical findings.  For example, Dr. Hla's treatment notes often reflected that plaintiff had fair to good insight/judgment, and no suicidal or homicidal ideation.  (AT 353, 355-67, 394-96, 398, 408, 432.)  In May 2010, Dr. Hla stated that plaintiff was stable with increased activity, and noted that she was hanging out with friends and going to a party on the weekend.  (AT 394.)  Plaintiff correctly notes that a person with bipolar disorder may experience fluctuations in his or her symptoms and that it would be improper for an ALJ to isolate a few "good days" to support a finding of non-disability.  However, while Dr. Hla at times noted increased anxiety, depression, and other mental symptoms, and then adjusted plaintiff's medications, her treatment notes fairly consistently do not document the type of severe findings associated with someone who supposedly cannot independently function outside of her own home.

////

---

[7] In another portion of the written decision, the ALJ noted that he did not concur "with the State agency's findings that the claimant does not have a severe mental impairment."  (AT 29, 47.)  However, this stray remark, which referenced Exhibit 8F/4, appears to have been an inadvertent error, because in Exhibit 8F/4, state agency psychiatrist Dr. Hurwitz affirmed state agency psychiatrist Dr. Paxton's initial mental assessment, which found insufficient evidence for plaintiff's Title II claims, but found that plaintiff could perform simple tasks in a non-public setting during the relevant period for plaintiff's Title XVI SSI claim.  (AT 375, 388, 425.)  Thus, the state agency physicians actually found that plaintiff had a severe mental impairment for purposes of the SSI claim and assessed an RFC, which the ALJ then adopted.  Another state agency physician found that plaintiff did not have a severe *physical* impairment (AT 425), but plaintiff has not challenged the Commissioner's findings with respect to any physical impairment in this court.  (See Dkt. No. 15-1 at 1-2.)

Additionally, as the ALJ observed, Dr. Hla primarily managed plaintiff's mental impairments with medication, and did not refer plaintiff for further therapy, counseling, behavior modification, or drug rehabilitation.  (AT 30, 47.)  Indeed, although plaintiff testified that Dr. Hla, as her psychiatrist, also provided talk therapy in addition to medication management (AT 85), Dr. Hla's notes do not contain any significant details regarding therapy or behavior modification.  Dr. Hla's own mental impairment questionnaire stated that plaintiff was seen once every month or two for medication management.  (AT 427.)  Conservative treatment can plausibly suggest "a lower level of both pain and functional limitation."  Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (explaining that treatment notes reflecting that the claimant was "in no acute distress" and prescription of a conservative course of treatment are "not the sort of description and recommendations one would expect" to accompany a finding of total disability).

Furthermore, although Dr. Hla could not be faulted for not referring plaintiff for drug rehabilitation given that plaintiff did not inform Dr. Hla of her drug use, Dr. Hla's opinion regarding the impact or materiality of plaintiff's drug use appears on a single-page, check "yes" or "no" form prepared by plaintiff's counsel, and is conclusory and unsupported by any reasoning.  (AT 439.)

Nevertheless, after a review of the entire record, the court cannot conclude that substantial evidence supports the ALJ's findings with respect to plaintiff's mental limitations from November 13, 2009, to the date of the ALJ's decision.  It is essentially undisputed that plaintiff suffered from a severe mental impairment during this period, because the ALJ found at step two that plaintiff's anxiety and depression were severe.  (AT 25, 42.)  The pertinent issue is whether plaintiff's mental impairments, in the absence of her drug use, are so severe as to render her disabled at later steps in the sequential evaluation process.  Although there are some serious questions as to Dr. Hla's opinion, she is a mental health specialist, and her opinion regarding plaintiff's mental limitations as of November 13, 2009, was not entirely conclusory or

unsupported.  Dr. Hla had been treating plaintiff regularly for several years, and her treatment records document several of the symptoms of which plaintiff complains.  Moreover, plaintiff has been prescribed a significant amount of psychotropic medication, including Celexa, Risperdal, Lithium, Dekapote ER, and Ambien.  (AT 427.)

Given these inconsistencies and ambiguities, and the ALJ's obvious concern regarding the impact of plaintiff's drug use, the appropriate course of action would have been to obtain a consultative evaluation.  For unknown reasons, the Commissioner elected not to do so and, instead, the ALJ essentially relied on the opinion of the state agency psychiatrists, who never examined plaintiff.  To be sure, a non-examining expert's opinion "may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  However, in this case, the only other medical opinion is that of Dr. Hla, and the other record evidence is too ambiguous to independently support the state agency psychiatrists' opinions.

Accordingly, remand for a consultative evaluation by an examining psychiatrist, or other appropriate mental health professional, with full access to plaintiff's prior treatment records, is necessary to adjudicate plaintiff's SSI claim.  The consultative examiner should also be requested to assess the effects of any substance abuse on plaintiff's impairments and functional limitations.  Depending on the results of the consultative evaluation, the ALJ may also consider conducting a supplemental hearing with vocational expert testimony regarding any limitations found, if necessary.  The court expresses no opinion regarding the weight ultimately to be given to any particular evidence on remand, and leaves it to the sound discretion of the ALJ to evaluate the record as a whole within the confines of the applicable law.

       2.      <u>Whether the ALJ improperly discounted plaintiff's statements regarding her symptoms and functional limitations.</u>

The ALJ's decision, and the Commissioner's briefing, raised some significant concerns regarding plaintiff's credibility.  However, in light of the court's conclusion that the

case should be remanded for further development of the record, which may or may not impact the ALJ's credibility determinations, the court declines to address the issue at this juncture.

V. <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (dkt. no. 15) is granted in part and denied in part.

2. The Commissioner's cross-motion for summary judgment (dkt. no. 16) is granted in part and denied in part.

3. Judgment is entered for plaintiff with respect to her claim for SSI under Title XVI of the Social Security Act insofar as plaintiff's SSI claim under Title XVI of the Social Security Act is remanded for further proceedings consistent with this order under sentence four of 42 U.S.C. § 405(g)..

4. Judgment is entered for the Commissioner with respect to plaintiff's claims for DIB and Disabled Child Insurance Benefits under Title II of the Social Security Act.

5. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: April 18, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE